RECEIVED

NOV 1 9 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

MERLIN C. GUILBEAU

VERSUS

PARISH OF ST. LANDRY, ET AL.

CIVIL ACTION NO. 06-0185

JUDGE DOHERTY

MAGISTRATE JUDGE HILL

### RULING

The instant lawsuit arises out of the failure of a political subdivision of the state of Louisiana – in this case, St. Landry Parish – to pay a tort judgment issued by a Louisiana state court and enuring to the benefit of the plaintiff, Merlin C. Guilbeau at a time designated by the plaintiff.

This matter was submitted to this Court for consideration on briefs. Due to a clack of clarity in the plaintiff's original and amended complaints, his Outline of claims, and his trial brief, it is unclear to this Court exactly *what* claims the plaintiff is alleging against defendants. For example, as will be more fully explained herein, it is unclear to this Court whether the plaintiff is actually alleging a claim for violation of his substantive due process rights under the Fourteenth Amendment. As this matter has been submitted to the Court on the merits by way of briefs, the plaintiff's failure to clearly articulate his claims could constitute a fatal procedural flaw. However, because it appears that all possible requests for relief which might have been asserted by the plaintiff would fail, as a matter of law, this Court will rule on the substantive claims before the Court.

Notwithstanding the foregoing, plaintiff filed the instant lawsuit pursuant to 42 U.S.C. §§ 1983 and 1988 against the St. Landry Parish Police Jury and its successor, St. Landry Parish, alleging the Parish's failure to pay his judgment when he requested that it be paid has completely divested

Guilbeau of his property without due process of law, and that such action constitutes a violation of the Fifth and Fourteenth Amendments of the United States Constitution. Plaintiff also contends Article 12, Section 10 of the Louisiana Constitution and La. Rev. Stat. §13:5109(B)(2) – the constitutional and statutory provisions protecting the Parish from seizure of public funds to pay the judgment – "as applied to judgments such as Guilbeau's that arise out of traffic accidents" violate the Supremacy Clause of the United States Constitution "because they actually conflict with the Highway Safety Act," and because "they are an obstacle to the accomplishment of the full purposes and objective of Congress." Plaintiff seeks an injunction ordering the Parish to pay his judgment, plus interest, or, alternatively, an injunction ordering the Parish to pay plaintiff "reasonable compensation for the taking and use of his property throughout the pendency of this proceeding." Finally, plaintiff requests that this Court "[d]eclare Louisiana Statute 13:5109(B)(2) and Article 12, Section 10 of the Louisiana Constitution unconstitutional and immediately compel the Defendants to satisfy the Judgment of the Plaintiff in full." Plaintiff also seeks nominal damages for the Parish's violation of his due process rights, as well as attorneys' fees pursuant to 42 U.S.C. §1988.

The defendants oppose the plaintiff's claims and seek the dismissal of all claims. In addition to the briefs of the plaintiff and defendant, the intervenor, the State of Louisiana, has filed a brief arguing that La. Rev. Stat. §13:5109(B)(2) and Article 12, Section 10 of the Louisiana Constitution are not unconstitutional.[1] For the following reasons, plaintiffs' claims are DENIED and this matter DISMISSED with prejudice.

## I. Facts

The parties have stipulated to the following facts:

---

[1] *See* Doc. 64.

1. On September 16, 1987, plaintiff, MERLIN C. GUILBEAU, sustained personal injuries as a result of an automobile accident which occurred on a Parish road maintained by the predecessor of the ST. LANDRY PARISH GOVERNMENT, namely the ST. LANDRY PARISH POLICE JURY.

2. MERLIN C. GUILBEAU filed a lawsuit against the ST. LANDRY PARISH POLICE JURY for damages arising from the said automobile accident. On June 26, 1990, the 27th Judicial District Court in and for St. Landry Parish, Louisiana, a Louisiana state court, rendered a Judgment in favor of MERLIN C. GUILBEAU and against the ST. LANDRY PARISH POLICE JURY in the amount of $179,673.51 for said damages, due to the fault of the ST. LANDRY PARISH POLICE JURY in maintaining the Parish Road on which the accident occurred.

3. The Judgment became final and unappealable in 1990.

4. The ST. LANDRY PARISH POLICE JURY and its successor, the ST. LANDRY PARISH GOVERNMENT, have never appropriated money to pay MERLIN C. GUILBEAU's Judgment, and the Judgment has not been paid as of this date.

5. The ST. LANDRY PARISH POLICE JURY and its successor, the ST. LANDRY PARISH GOVERNMENT, is a political subdivision of the State of Louisiana.

6. The ST. LANDRY PARISH POLICE JURY and its successor, the ST. LANDRY PARISH GOVERNMENT, have not paid the Judgment in reliance upon Louisiana's anti-seizure statutes, namely Article XII, Section 10, Subsection C of the 1974 Louisiana Constitution and La.R.S. 13:5109 (B)(2).

7. The ST. LANDRY PARISH POLICE JURY, and its successor, the ST. LANDRY PARISH GOVERNMENT, have not paid any Judgments rendered against them in favor of any person for over the past twenty-five (25) years, nor have they enacted a framework for doing so.

8. The ST. LANDRY PARISH GOVERNMENT contends that, for over the last twenty-five (25) years, after the payment of expenses which the ST. LANDRY PARISH GOVERNMENT contends are mandated by Louisiana law, as well as after the payment of other expenses which the ST. LANDRY PARISH GOVERNMENT deems necessary to provide essential services and facilities to the citizens of St. Landry Parish, there is no money remaining to pay Judgments, although in some years there is money remaining which is carried over to the following year.

9. Plaintiff, MERLIN C. GUILBEAU, conducted a Judgment Debtor Examination of the defendant, ST. LANDRY PARISH GOVERNMENT, in the 27th Judicial District Court in and for St. Landry Parish, Louisiana, on September 10, 2004.

## II. Applicable Statutes and Constitutional Provisions

The following constitutional and statutory provisions are at play in the instant matter:

42 U.S.C. §1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. §1983. 42 U.S.C. §1988(b) states:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C. §1988.

Article 12, Section 10 of the Louisiana Constitution states:

**(A) No Immunity in Contract and Tort.** Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.

**(B) Waiver in Other Suits.** The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.

**(C) Limitations; Procedure; Judgments.** Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. *It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.*

LA. CONST. art. XII, §10 (emphasis added).

Similarly, La. Rev. Stat. §13:5109(B)(2) states:

Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit *shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.*

La. Rev. Stat. §13:5109 (B)(2) (emphasis added).

The foregoing Louisiana statutory and constitutional provisions establish that neither public property nor public funds is subject to seizure for the purpose of satisfying a judgment against a political subdivision of the state, and a judgment against a political subdivision may only be paid from funds appropriated by the political subdivision for such purpose.

The federal Highway Safety Act, 42 U.S.C. 203, states in pertinent part:

**(a)** *Each State shall have a highway safety program approved by the Secretary, designed to reduce traffic accidents and deaths, injuries, and property damage resulting therefrom.* Such programs shall be in accordance with uniform guidelines promulgated by the Secretary. Such uniform guidelines shall be expressed in terms of performance criteria. In addition, such uniform guidelines shall include programs (1) to reduce injuries and deaths resulting from motor vehicles being driven in excess of posted speed limits, (2) to encourage the proper use of occupant protection devices (including the use of safety belts and child restraint systems) by occupants of motor

vehicles, (3) to reduce deaths and injuries resulting from persons driving motor vehicles while impaired by alcohol or a controlled substance, (4) to prevent accidents and reduce deaths and injuries resulting from accidents involving motor vehicles and motorcycles, (5) to reduce injuries and deaths resulting from accidents involving school buses, and (6) to reduce accidents resulting from unsafe driving behavior (including aggressive or fatigued driving and distracted driving arising from the use of electronic devices in vehicles) (7) to improve law enforcement services in motor vehicle accident prevention, traffic supervision, and post-accident procedures.. . .

23 U.S.C.A. § 402(a) (emphasis added) (internal citations omitted).[2]

## III.   PROCEDURAL HISTORY

---

[2] Subsection (a) of the Highway Safety Act goes on to say:

> The statute The Secretary shall establish a highway safety program for the collection and reporting of data on traffic-related deaths and injuries by the States. Under such program, the States shall collect and report such data as the Secretary may require. The purposes of the program are to ensure national uniform data on such deaths and injuries and to allow the Secretary to make determinations for use in developing programs to reduce such deaths and injuries and making recommendations to Congress concerning legislation necessary to implement such programs. The program shall provide for annual reports to the Secretary on the efforts being made by the States in reducing deaths and injuries occurring at highway construction sites and the effectiveness and results of such efforts. The Secretary shall establish minimum reporting criteria for the program. Such criteria shall include, but not be limited to, criteria on deaths and injuries resulting from police pursuits, school bus accidents, aggressive driving, fatigued driving, distracted driving, and speeding, on traffic-related deaths and injuries at highway construction sites and on the configuration of commercial motor vehicles involved in motor vehicle accidents. Such uniform guidelines shall be promulgated by the Secretary so as to improve driver performance (including, but not limited to, driver education, driver testing to determine proficiency to operate motor vehicles, driver examinations (both physical and mental) and driver licensing) and to improve pedestrian performance and bicycle safety. In addition such uniform guidelines shall include, but not be limited to, provisions for an effective record system of accidents (including injuries and deaths resulting therefrom), accident investigations to determine the probable causes of accidents, injuries, and deaths, vehicle registration, operation, and inspection, highway design and maintenance (including lighting, markings, and surface treatment), traffic control, vehicle codes and laws, surveillance of traffic for detection and correction of high or potentially high accident locations, enforcement of light transmission standards of window glazing for passenger motor vehicles and light trucks as necessary to improve highway safety, and emergency services. Such guidelines as are applicable to State highway safety programs shall, to the extent determined appropriate by the Secretary, be applicable to federally administered areas where a Federal department or agency controls the highways or supervises traffic operations.

23 U.S.C. §402(a) (emphasis added).

Plaintiff filed the instant lawsuit in this Court on February 2, 2006. In his original complaint, entitled "Complaint for Injunctive Relief and Declaratory Judgment," the plaintiff alleges "[a] private right of action lies under 42 U.S.C. §1983 and §1988 to redress deprivations, under color of state law, of the rights, privileges and immunities secured to the Plaintiff under the Constitution of the United States and the Constitution of the State of Louisiana."[3] The plaintiff goes on to allege the following:

1. The Defendants continuing refusal to pay the Judgment of Merlin Guilbeau violates Article 1, Section 8, Clause 3 of the United States Constitution, (hereinafter, "the Commerce Clause"), which empowers the United States Congress "To regulate Commerce with foreign Nations, and among the several states, and with the Indian Tribes."[4]

2. La. Rev. Stat. 13:5109(B)(2) and Article XII, Section 10 of the Louisiana Constitution "are unconstitutional because they violate the directives established by Congress, in the exercise of its authority pursuant to the Commerce Clause, to reduced damages related to highway safety."[5]

As the plaintiff alleges the unconstitutionality of a provision of the Louisiana Constitution, pursuant to 28 U.S.C. §2403(b), on December 21, 2006, this Court officially notified the Louisiana Attorney General of the pendency of the action and invited the State of Louisiana to intervene in the matter. On January 12, 2007, the State of Louisiana moved to intervene in the lawsuit;[6] the Court granted the State's motion on January 17, 2007.[7]

On May 16, 2007, plaintiff filed a First Supplemental and Amended Complaint, in which the

---

[3] See Complaint, Doc. 1, at ¶3.

[4] *Id.* at ¶16.

[5] *Id.* at ¶24.

[6] Doc. 20.

[7] Doc. 21.

plaintiff appears to abandon his claim that Article 12, Section 10 of the Louisiana Constitution and La. Rev. Stat. §13:5109(B)(2) violate the *Commerce Clause* of the United States Constitution and instead asserts a claim that these state provisions violate the *Supremacy Clause* of the United States Constitution, because "they conflict with the Highway Safety Act of 1966, 23 U.S.C. §401, *et seq.*," a federal highway safety program which is "designed to reduce traffic accidents and deaths, injuries, and property damage resulting therefrom."[8] Plaintiff contends the Louisiana constitutional and statutory provisions "actually conflict" with the Highway Safety Act and "are an obstacle to the accomplishment of the full purposes and objectives of Congress" in enacting that legislation.[9] The plaintiff also added a claim alleging his judgment against St. Landry Parish is a vested property interest, and that in failing to pay the judgment at a time designated by the plaintiff, the Parish has denied plaintiff his vested right in his property in violation of the due process clause of the Fourteenth Amendment of the United States Constitution.[10] Alternatively, plaintiff alleges "the seventeen-year delay in paying the judgment constitutes a sufficiently serious deprivation of property to constitute a violation of the plaintiff's due process rights."[11] Plaintiff further alleges the Parish has adopted a pattern, policy, custom, and official practice of never paying judgments, and that "[t]his pattern and practice of unconstitutional behavior constitutes a violation of 42 U.S.C. §1983."[12]

---

[8] 23 U.S.C. §402(a).

[9] *See* "First Supplemental and Amended Complaint for Injunctive Relief and Declaratory Judgment," Doc. 39, at ¶¶14, 18 & 19.

[10] *Id.* at ¶¶22-24.

[11] *Id.* at ¶25.

[12] *Id.* at ¶26. Although how such action could constitute a violation of only 42 U.S.C. § 1983 and no underlying federal statute or provision of the United States Constitution is quite unclear.

In his prayer for relief, plaintiff prays for the following:

A)    Enjoin Defendants St. Landry Parish Police Jury and St. Landry Parish both preliminarily and permanently to pay Plaintiff Merlin Guilbeau the sum of THREE HUNDRED NINETY THREE THOUSAND THREE HUNDRED SEVENTY-GIVE AND 88/100 ($393,758.88) DOLLARS, plus interest accruing from the date of filing of this suit forward, and costs;

B)    In the alternative to Paragraph A above, enjoin Defendants to pay Plaintiff reasonable compensation for the taking and use of his property throughout the pendency of this proceeding, said reasonable compensation to be ongoing monthly interest payments in the judicial rate amount;

C)    Declare Louisiana Statute 13:5109(B)(2) and Article XII, Section 10 of the Louisiana Constitution unconstitutional and immediately compel the Defendants to satisfy the Judgment of the Plaintiff in full; and

D)    Award plaintiff reasonable attorneys fees; and

E)    For any and all further relief that this Court deems necessary and proper.[13]

In January 2008, this matter was converted to a trial on the briefs at the request of the parties. At that time, a briefing schedule was set. Also at that time, the plaintiff was ordered to file an Outline of claims to clarify his claims against the Parish in order to facilitate the Court's resolution of the issues. In that Outline, the plaintiff sets forth what appear to be three claims as designated: (1) the "Takings Clause" claim, in which plaintiff alleges deprivation of a property interest under the "Fourteenth Amendment's [T]akings [C]lause;" (2) the "Substantive Due Process" claim, in which plaintiff alleges deprivation of a property interest under the *procedural due process clause* of the Fourteenth Amendment; and (3) the "Supremacy Clause" claim, in which plaintiff contends Article 12, Section 10 of the Louisiana Constitution and La. Rev. Stat. §13:5109(B)(2) violate the Supremacy Clause of the United States Constitution because they conflict with the federal Highway

---

[13] *Id.* Nowhere in his supplemental and amending complaint does the plaintiff mention the Fifth Amendment's Takings Clause, however, in his Outline of Claims, the plaintiff couches his "takings" claim in terms both the Fifth Amendment and the Fourteenth Amendment.

Safety Act. Thus, based on the outline of claims filed by plaintiff, the purpose of which was to clarify the claims not clearly pled in either the plaintiff's original or amended complaints, it appears the plaintiff is asserting only the three foregoing claims. Significantly, as the court has previously noted, it does not appear the plaintiff is asserting a claim for violation of his *substantive* due process rights under the Fourteenth Amendment. Indeed, in plaintiff's attempts to distinguish the leading case on this issue -- *Minton v. St. Bernard Parish School Board*, 803 F.2d 129 (5th Cir. 1986) – plaintiff notes the *Minton* case does not apply to his claim, because the *Minton* case addressed a *substantive due* process violation under the Fourteenth Amendment rather than a "takings" clause claim under the Fifth Amendment. Based on the foregoing, and an absence of otherwise relevant argument or evidence, this Court concludes the plaintiff has not carried his burden to assert a claim for violation of his substantive due process rights under the Fourteenth Amendment.[14]

## III.  ANALYSIS

### A.  42 U.S.C. §1983 and §1988

In his original and amended complaints, the plaintiff alleges "[a] private right of action lies under 42 U.S.C. §1983 and §1988 to redress deprivations, under color of state law, of the rights, privileges and immunities secured to the Plaintiff under the Constitution of the United States and the Constitution of the State of Louisiana."[15] Significantly, the plaintiff fails to mention Section 1983 beyond the generic references to this section in the complaint and amended complaint, and the plaintiff has provided no framework for the interplay between Section 1983 and the constitutional violations he alleges in his trial brief.

---

[14]See also footnote 23.

[15] *See* Doc. 1, ¶3.

42 U.S.C. §1983 "imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities **secured by the Constitution and laws**." *Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 697, 702 (5th Cir. 2007), *citing Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (emphasis added, internal quotations omitted). There are two essential elements to any §1983 action. First, the conduct complained of must have been committed by one acting under color of state law; and second, this conduct must have deprived the plaintiff of rights, privileges, or immunities *secured by the Constitution or laws of the United States. Augustine v. Doe*, 740 F.2d 322, 324-25 (5th Cir. 1984), *citing Parratt v. Taylor*, 1981, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420. The §1983 remedy encompasses violations only of rights secured by federal statutory as well as constitutional law. It creates no free standing right or cause of action unto itself. *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). In order to seek redress through §1983, therefore, "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law.*" *Blessing*, 520 U.S. at 340, 117 S.Ct. 1353 (emphasis in original) *citing Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). In *Gonzaga University v. Doe*, 536 U.S. 273, 283, 122 S.Ct. 2268 (2002), the Supreme Court declared:

> Section 1983 provides a remedy only for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. Accordingly, it is *rights*, not the broader or vaguer "benefits" or "interests," that may be enforced under the authority of that section.

To prevail under §1983, a plaintiff must show she was harmed because of a constitutional violation and the defendants are responsible for the violation. *See Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). *See also Daniels v. Williams*, 474 U.S. 327, 330 (1986) ("A fundamental requirement for any §1983 claim is the existence of a

constitutional violation.").

Neither party addresses the issue of whether St. Landry Parish acted under color of state law in committing the actions of which the plaintiff complains. As a practical matter, it appears the Parish, as a political subdivision of the state, was acting under color of state law when it did not pay the plaintiff's state court judgment at the time plaintiff sought to enforce it. As neither party discusses this issue, this Court will make the reasonable inference that the Parish was acting under color of state law at the time it did not pay the plaintiff's judgment when he requested that it be paid.

Thus, the remaining inquiry under Section 1983 is whether the plaintiff can demonstrate that St. Landry Parish violated one of his constitutional or statutory *rights*.

### B.  Fourteenth Amendment

In his Outline of claims, plaintiff alleges the $179,673.51 Judgment against St. Landry Parish is a final judgment, the Parish refuses to pay that Judgment, and the Parish has admitted it has an official policy of not paying any judgments whatsoever. Plaintiff further alleges he was afforded no hearing or opportunity to be heard before the Parish decided to apply its official policy to him. As a result, plaintiff avers the Parish's actions have "taken away his vested property rights in his judgment."

Plaintiff contends the foregoing facts give rise to two claims under the Fourteenth Amendment of the United States Constitution: (1) a claim for deprivation of private property without just compensation under "the Fourteenth Amendment's [T]akings [C]lause" and (2) a violation of plaintiff's *procedural* due process rights for failure of the Parish to give him pre-deprivation notice and an opportunity to be heard prior to the deprivation.

1.  **Deprivation of Property Under the "Fourteenth Amendment's Takings Clause"**

Plaintiff alleges the following with respect to his "takings clause" claim:

> The Takings Clause of the **Fifth Amendment**, made applicable to states through the **Fourteenth Amendment**, provides that private property shall not "be taken for public use, without just compensation." To determine whether the Parish's actions have violated the Takings Clause, the court must examine (1) whether Guilbeau possessed a recognized property interest; and (2) whether the Parish's actions took that interest.
>
> . . . The property interests protected by the *Fourteenth Amendment's Taking Clause* are denied by state law.[16]

(emphasis added).

First, this Court notes the plaintiff refers to the "Takings Clause" throughout his briefing as the "Fourteenth Amendment's Takings Clause" or the "Takings Clause component of the Fourteenth Amendment."[17] Such references to a "Takings Clause" are incorrect, and indeed, in the first paragraph noted above, the plaintiff properly notes the "Takings Clause" is derived from the *Fifth* Amendment of the United States Constitution – not the Fourteenth Amendment – and is only made *applicable* to the states through the Fourteenth Amendment. *Lingle v. Chevron USA, Inc.*, 544 U.S. 528, 536 (1995) (recognizing the Takings Clause is applicable to the states through the Fourteenth Amendment). *See also Urban Developers, LLC v. City of Jackson, Miss.*, 468 F.3d 281 (5th Cir. 2006), *citing Chicago, B & Q.R. Co. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581, 584, 41 L.Ed.2d. 979 (1897).

---

[16] *See* Plaintiff's Trial Brief, Doc. 61, at p. 5.

[17] *See, e.g.*, plaintiff's Outline of Claims, Doc. 55, at p. 2 and plaintiff's Trial Brief, Doc. 61, at p. 5.

The Fifth Amendment prohibits the taking of "private property" "for public use without just compensation."[18] U.S. CONST. amend. V. The Fifth Circuit has held the existence of a property interest is determined not by the Constitution itself, but by reference to "existing rules or understandings that stem from an independent source such as state law." *Hatfield v. Scott*, 306 F.3d 223, 226 (5th Cir. 2002), *citing Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). *See also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (interests in "property" are created and defined by state law).

This Court notes the plaintiff does not cite a Fifth Circuit case addressing the standard to be employed by this Court in considering a "Takings Clause" claim. Rather, plaintiff cites a First Circuit case, *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1 (1st Cir. 2007), for the proposition that there is a two-step analysis utilized by courts to make such determinations. Under the First Circuit case, the steps are (1) whether the plaintiff possesses a recognized property interest; and (2) whether the defendant's actions "took" that interest.

This Court conducted its own research to determine the standard for analyzing takings claims in the Fifth Circuit and learned that, rather than employing the two-step analysis used by the First

---

[18] The full text of the Amendment states:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. CONST. amend V.

Circuit, the Fifth Circuit notes, "[t]here is no set formula for identifying a "taking" forbidden by the Fifth Amendment; rather, courts use an "ad hoc, factual inquir[y] into the circumstances of [the] case." *Dorn v. Int'l Broth. of Elec. Workers*, 211 F.3d 938, 948 (5th Cir. 2000) (holding plaintiff did not meet her burden to show she had any private property which has been the subject of a taking), *citing Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 224, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). Such factual inquiry requires this Court to determine whether the plaintiff has a recognized property interest in his state court judgment in this case.

Plaintiff contends he possessed a property interest in his state court judgment, citing *Cassard v. Tracy*, 27 So. 368 (La. 1899). In *Cassard*, the Louisiana Supreme Court held a "judgment is to be considered as 'property,' within the meaning of the fourteenth amendment." 27 So. at 373. Plaintiff contends that in refusing to allocate funds for the payment of his judgment, the Parish has "taken" his private property without just compensation, a violation of the Fifth Amendment's "Takings Clause."

The Fifth Circuit however, previously rejected a similar argument, and, indeed, has held the failure of a government entity to pay a judgment at a specific time is not a violation of an individual's *substantive due process rights*. In *Minton v. St. Bernard Parish School Board*, 803 F.2d 129 (5th Cir. 1986), the plaintiff – a non-resident of St. Bernard Parish – was granted a final tort judgment against a Louisiana parish school board – also a political subdivision of the state -- by a Louisiana state court. The School Board failed to pay the judgment, invoking the protection of La. Rev. Stat. §13:5019, the statute relied upon, in part, by the plaintiff in this action.[19] The plaintiff filed suit in federal court, seeking injunctive and monetary relief against the School Board pursuant

---

[19] The plaintiff in *Minton* did not also base her claims on Article 12, Section 10 of the Louisiana Constitution, as the plaintiff does in this action.

to 42 U.S.C. §1983, arguing the School Board deprived her of her property without due process of law pursuant to the Fourteenth Amendment.[20] *Minton*, 803 F.2d at 130-31.

After consideration of plaintiff's substantive due process claim under the Fourteenth Amendment, the court stated:

> The Board's failure to pay the Mintons' judgment is not a denial of due process. The Supreme Court determined long ago in *Louisiana ex rel. Folsom v. Mayor of New Orleans* that ***the property right created by a judgment against a government entity is not a right to payment at a particular time but merely the recognition of a continuing debt of that government entity.***

*Id.* at 132 (emphasis added), *citing Louisiana ex rel. Folsom v. Mayor of New Orleans*, 109 U.S. 285, 3 S.Ct. 211, 27 L.Ed. 936 (1883). Indeed, in *Louisiana ex rel. Folsom v. Mayor of New Orleans*, the United States Supreme Court stated: "A party cannot be said to be deprived of his property in a judgment because at the time he is unable to collect it." 109 U.S. at 289.

In so holding, the Fifth Circuit distinguished a Seventh Circuit case – *Evans v. City of Chicago*, 689 F.2d 1286 (7th Cir. 1982) – wherein the Seventh Circuit held a city's practice of delaying payment of judgments of over $1,000 constituted a deprivation of property under the Fourteenth Amendment's due process clause. The Fifth Circuit observed:

> The court in *Evans,* however, distinguished *Folsom* because Illinois law creates a specific property right in a judgment entitling a judgment creditor to immediate payment if the judgment is not satisfied within the fiscal year following the year in which the judgment was rendered and the debtor city fails to invoke prescribed procedures for delaying payment. *Because no such right to immediate payment is created by Louisiana law, the principle set forth in Folsom continues to control this case and the School Board's failure to appropriate funds to pay the debt to the Mintons does not constitute a taking in violation of the due process clause.*

*Minton*, 803 F.2d at 132, *citing Evans*, 689 F.2d at 1297 (emphasis added). *See also Bennett v. City*

---

[20] The plaintiff in *Minton* also argued that by refusing to pay judgments in favor of non-residents of St. Bernard Parish while satisfying claims raised by residents of the parish, the School Board denied her equal protection of the law as guaranteed by the Fourteenth Amendment. *Minton*, 803 F.2d at 130-31.

*of New Orleans*, 2004 WL 60316 (E.D. La. 2004) ("Under controlling Fifth Circuit precedent [*Minton*], the City's failure to pay plaintiffs' judgments does not, therefore, give rise to a federal cause of action under the Due Process Clause of the Fourteenth Amendment."); *Williamson v. Chicago Transit Authority,* 185 F.3d 792, 795 (7th Cir.1999) (Seventh Circuit held "the failure of a unit of state or local government to make payment on either a judgment award or settlement agreement does not give rise to a due process claim."). *See also Foreman v. Vermilion Parish Police Jury*, 336 So.2d 986, 988 (La. App. 3rd Cir. 1976) (finding that public property seized to pay judgment could not be seized for that purpose pursuant to Article 12, Section 10 of the Louisiana Constitution and La. Rev. Stat. 13:5109, noting "[t]hose constitutional and statutory provisions were adopted or enacted long after the cases cited by plaintiff were decided, so the cases relied on by him are not applicable here.").

Plaintiff seeks to distinguish the *Minton* case on grounds it dealt only with the "substantive due process clause" of the Fourteenth Amendment and not the "Fifth Amendment's Takings Clause." The plaintiff also contends the *Minton* case is no longer good law, as it relies upon the United States Supreme Court's interpretation of Louisiana law in *Folsom* but does not reference the Louisiana Supreme Court's later *Cassard* opinion, in which the Louisiana court held a judgment is a property right under Louisiana law. Finally, the plaintiff argues *Minton* recognizes that a judgment is "essentially a recognition of the continuing debt of a government entity," but in this case, through its long-standing policy of not paying judgments, the Parish has, in effect, stated there is no such debt owed to the plaintiff.

The plaintiff's attempts to distinguish *Minton* are misplaced. First, although *Minton* does, indeed, hold that La. Rev. Stat. §13:5019(B)(2) did not violate the plaintiff's substantive due process

rights under the Fourteenth Amendment and makes no reference to the Fifth Amendment's "Takings Clause," this Court concludes the case provides support for the conclusion the Parish's failure to pay the plaintiff's judgment is not a violation of the Takings Clause. Indeed, "[t]he sine qua non of a constitutional taking is a loss occasioned by an intrusion, interference or encroachment of some degree *upon the private property owner's rights in his property.*" *Florida East Coast Properties, Inc. v. Metropolitan Dade County*, 572 F.2d 1108, 1111 (5th Cir. 1978) (emphasis added). In *Minton*, the Fifth Circuit observed a judgment does indeed create a property right, but "the property right created by a judgment against a *government entity is not a right to payment at a particular time but merely the recognition of a continuing debt of that government entity.*" *Minton*, 803 F.2d at 132. Thus, the Fifth Circuit's holding in *Minton* is not violative of *Cassard* – a case, this Court notes, which involved a judgment *against individuals and not against a political subdivision* of the state government -- and which recognized the creation of a property right in a judgment under those dissimilar circumstances. Indeed, based on this Court's interpretation of the two cases, the two cases are not inconsistent. Both cases recognize an individual has a property interest in a judgment. However, the *Minton* court *clarified the scope* of such property right when dealing with a governmental entity by referencing *Louisiana ex rel. Folsom v. Mayor of New Orleans*, wherein the United States Supreme Court stated: "A party cannot be said to be deprived of his property in a judgment because at the time he is unable to collect it." 109 U.S. at 289. Thus, although the plaintiff in this matter does indeed have a property right in his judgment, pursuant to established caselaw that binds this Court, that property interest is merely the recognition of a continuing debt *of the Parish of St. Landry* and not a right to payment at a particular time.

Considering the foregoing, this Court concludes the *Minton* case, which squarely holds the

failure of a governmental entity to pay a judgment against it in reliance upon La. Rev. Stat. §13:5019(B)(2) does not violate the substantive due process clause of the Fourteenth Amendment, extends to the plaintiff's argument that the same action violates the Fifth Amendment's "Takings Clause," inasmuch as the "Takings Clause" analysis is similarly dependent upon the identification of a recognized private property interest. Therefore, the failure of the Parish to pay the plaintiff's state court judgment at a time designated by the plaintiff cannot be said to be a deprivation of plaintiff's property right.

The plaintiff's argument, that the Parish's failure to pay the judgment, in effect, evidences the Parish's view that there is no such debt, is perhaps compelling, but similarly misplaced. Although current Parish President Don Menard testified the Parish is not currently paying judgments and he does not foresee the Parish paying judgments in the future,[21] the plaintiff cannot say with certainty that he will never collect on his judgment. Indeed, parish presidents and parish lawmakers change with elections and parish policy may change in the future with new leaders. This Court observes the Parish has never attempted to void the judgment, nor has the Parish taken specific steps to make this particular judgment unenforceable. The Parish acknowledges the existence of this judgment and resultant debt to the plaintiff, but has merely declined to appropriate funds for the purpose of satisfying the judgment at a time designated by the plaintiff. Such action is wholly permissible under Louisiana and federal law. To the extent plaintiff disagrees with the underlying policy determination reflected in the Louisiana law, that is a matter better directed to the Louisiana legislature.[22]

---

[21] *See* Deposition of Don Menard, attached as Exhibit 2 to plaintiff's Trial Brief, at pp. 116-19.

[22] Although this court has sympathy for a plaintiff who obtains an otherwise valid judgment against a state agency or entity, and the state agency or entity, through custom, practice and declaration, creates a policy of refusal to appropriate funds to satisfy that judgment indefinitely and historically, a policy determination has been made by

Considering the foregoing, this Court concludes the plaintiff fails to carry his burden to establish St. Landry Parish has committed an illegal taking of his private property without just compensation by failing to pay the state court judgment in reliance upon Article 12, Section 10 of the Louisiana Constitution and La. Rev. Stat. §13:5109(B)(2). Therefore, this Court concludes St. Landry Parish has not violated plaintiff's constitutional rights pursuant to the Fifth Amendment's "Takings Clause," and plaintiff, therefore, has no right of action under Section 1983 for violation of the Fifth Amendment of the United States Constitution.

## 2. Procedural Due Process Clause Under the Fourteenth Amendment[23]

Plaintiff alleges he was entitled to the protections of procedural due process under the Fourteenth Amendment, which afforded him pre-deprivation notice that his judgment would not be paid and an opportunity to be heard at a meaningful time and in a meaningful manner. Specifically, plaintiff contends "the Parish has never formally notified [him] that it will not pay him, nor has a hearing ever been conducted into plaintiff's rights under his judgment, or whether it should be paid."[24] Plaintiff contends he is entitled to nominal damages for the failure of the Parish to uphold his procedural due process rights pursuant to *Carey v. Piphus*, 435 U.S. 247, 266 (1978),[25] and that

---

the State of Louisiana and St. Landry Parish's choice to hide behind that policy determination, in the manner chosen, does not grant plaintiff the relief sought. Again, the matter is one better presented to the Louisiana legislature for its consideration.

[23] Although it is unclear whether plaintiff is alleging a claim for violation of his *substantive* due process rights under the Fourteenth Amendment, any such claim – to the extent it has been alleged – is foreclosed by the Fifth Circuit's decision in *Minton*.

[24] *See* Doc. 56, at p. 8.

[25] In *Carey*, the Supreme Court stated:

> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, *see Boddie v. Connecticut*, 401 U.S. 371, 375, 91 S.Ct. 780, 784, 28 L.Ed.2d 113 (1971); *Anti-Fascist Committee v. McGrath*, 341 U.S., at 171-172, 71 S.Ct., at 648-649 (Frankfurter, J., concurring), we believe that the denial of procedural due

pursuant to 42 U.S.C. §1988,[26] he is entitled to attorneys' fees on this claim as the prevailing party.

In determining whether state action has violated an individual's right to procedural due process, a court must address two questions. First, it must decide whether the state action has deprived the individual of a protected interest – life, liberty, or property. Finding such a deprivation, the court must then determine whether the state procedures available for challenging the deprivation satisfy the requirements of due process. *Augustine v. Doe*, 740 F.2d 322, 327 (5th Cir. 1984), *citing Hudson*, 468 U.S. at 531-32, 104 S.Ct. at 3203-04; *Logan v. Zimmerman Brush Co.*, 1982, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265; *Parratt v. Taylor*, 451 U.S. at 535-37, 101 S.Ct. at 1912-13; *Ingraham v. Wright*, 1977, 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711.

In this case, the Court has determined the plaintiff has a recognized property *interest* in his state court judgment, but that interest is not a *right* to payment at a particular time but, rather, is merely recognition of a continuing debt of the Parish. Therefore, this Court has concluded that in failing to pay the judgment at a time designated by the plaintiff, the Parish has not violated plaintiff's property interest in his judgment, i.e., the Parish has not illegally "taken" plaintiff's property interest in his judgment, pursuant to the Fifth Circuit's binding decision in *Minton*. In light of this finding, and with respect to the first element to be considered by the Court in determining whether plaintiff's procedural due process rights have been violated, this Court concludes plaintiff has not been deprived of a protected property interest under the facts of this case. Therefore, the plaintiff does

---

process should be actionable for nominal damages without proof of actual injury. 435 U.S. at 266, 98 S.Ct. at 1054.

[26] 42 U.S.C. §1988(b) states:

> In any action or proceeding to enforce a provision of sections . . . . 1983 . . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . .

not establish a violation of his procedural due process rights under the Fourteenth Amendment. Consequently, this claim is without merit, and this Court concludes plaintiff is not entitled to either nominal damages pursuant to *Carey v. Piphus*, 435 U.S. 247, 266 (1978), or attorneys' fees pursuant to 42 U.S.C. §1988.

### C. Supremacy Clause Claim

Plaintiff alleges Article 12, Section 10 of the Louisiana Constitution and La. Rev. Stat. §13:5109(B)(2) violate the Supremacy Clause of the United States Constitution because they conflict with the federal Highway Safety Act, 23 U.S.C. §402. As such, plaintiff seeks a declaration from this Court that Article 12, Section 10 of the Louisiana Constitution and La. Rev. Stat. §13:5109(B)(2) are unconstitutional.

The Supremacy Clause of the United States Constitution states:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, *shall be the supreme Law of the Land*; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. CONST. art. VI, cl. 2 (emphasis added). The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail. *Gonzales v. Raich*, 545 U.S. 1, 29, 125 S.Ct. 2195, 2212 (2005).

Under general principles of conflict preemption, a law is preempted "to the extent that it actually conflicts with federal law," *English v. Gen. Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990), that is, when it is impossible to comply with both state and federal law. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

Further, a state law is conflict preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *Pac. Gas & Elec. Co.,* 461 U.S. at 203-04, 103 S.Ct. 1713.[27]

Plaintiff contends there is an "actual conflict" between Article 12, Section 10 of the Louisiana Constitution and La. Rev. Stat. §13:5109(B)(2) and the Highway Safety Act. Specifically, plaintiff alleges the Highway Safety Act requires the states to enact programs that are "designed to reduce . . . property damage" resulting from traffic accidents, and that there is

> no question that Guilbeau's judgment, which resulted from a traffic accident, is property under state law. And it similarly cannot be disputed that, far from *reducing* damage to this property interest, the state's statutory scheme has the pernicious effect of *increasing* damage to that interest – to the point where it is virtually worthless – by permitting the Parish to decide, on its own volition, whether it ever has to account for its negligence in highway safety.[28]

Alternatively, plaintiff contends that, even if Louisiana state law does not actually conflict with the federal Highway Safety Act, the state statutory and constitutional provisions are "an obstacle to the accomplishment of the full purposes and objectives of Congress." Plaintiff argues the legislative history of the Act demonstrates that Congress believed it was "critical to address the economic costs of highway safety," but that "under Louisiana's constitutional and statutory scheme for enforcing judgments, [plaintiff] can never force the Parish to pay for its negligence. This clearly frustrates the intent of Congress."[29]

---

[27] This Court notes the brief filed by the State of Louisiana was of almost no assistance to this Court, as the brief contained citations to only two Fifth Circuit cases – one of which was the *Minton* decision already before the Court -- but rather, cited to decisions rendered by the First, Seventh and Eleventh Circuits, as well as several district court cases outside the Fifth Circuit, cases that are not binding on this Court and would only be of benefit to this Court in the absence of any Fifth Circuit cases addressing the issues.

[28] *See* Plaintiff's Trial Brief, Doc. 61, at p. 12.

[29] *Id.* at p. 13.

Plaintiff's arguments are not persuasive. Indeed, from a review of all three provisions, this Court does not conclude it is impossible to comply with Article 12, Section 10 of the Louisiana Constitution and La. Rev. Stat. §13:5109(B)(2) and the Highway Safety Act. Congress's intent in passing the Highway Safety Act was to prevent and minimize accidents, and in this vein, requires states to adopt programs pertaining to such matters as driver examination, licensing, highway design and maintenance, lighting, marking, surface treatment, accident recordation and emergency services. Indeed, the first sentence of the Act states: "Each State shall have **a highway safety program** approved by the Secretary, *designed to reduce traffic accidents and deaths, injuries, and property damage resulting therefrom.*"[30] The Act does not address in any way the ability of an individual to collect a money judgment from the State, nor does the Act address the specific prohibition against the seizure of public funds or property to satisfy such judgments. Clearly, there can be compliance with all three provisions without conflict. Therefore, this Court concludes the federal and state provisions do not actually conflict.

Nor does this Court conclude the state provisions "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." While the Highway Safety Act seeks to promote safety in the use and navigation of the federal highway system by regulating highway concerns through state channels, the Act does not require an individual be allowed to collect a judgment against a State or state entity for failing to maintain a highway or roadway. Indeed, the plaintiff in the instant matter has a valid judgment against St. Landry Parish that could be executed in the future. The purpose of the Highway Safety Act in preventing accidents is not, therefore, thwarted by the existence of Louisiana constitutional and statutory provisions that

---

[30] 23 U.S.C. 402(a).

were enacted to protect political subdivisions of the State – many of which are financially constrained – from enduring further financial constraints should they be required to pay individual *tort judgments*. The plaintiff has cited no Fifth Circuit cases to support such an argument, and this Court does not find the purposes of the Highway Safety Act are frustrated by the Louisiana constitutional and statutory provisions.

The fact a political subdivision could, as a practical matter, decline to appropriate funds for payment of certain judgments indefinitely is perhaps troubling but, again is not violative of the United States Constitution, here the argued Supremacy Clause. Again, the matter is better addressed to the Louisiana legislature, not the federal courts.

Considering the foregoing, this Court concludes plaintiff's claim that Article 12, Section 10 of the Louisiana Constitution and La. Rev. Stat. §13:5109(B)(2) violate the Supremacy Clause of the United States Constitution because they conflict with the federal Highway Safety Act, 23 U.S.C. §402 is without merit, and such claim is DISMISSED WITH PREJUDICE.

## IV.   CONCLUSION

For the foregoing reasons, plaintiff's claims under 42 U.S.C. § 1983 against St. Landry Parish for violations of the Fifth Amendment's Taking Clause and the Fourteenth Amendment's procedural due process component are DISMISSED WITH PREJUDICE. Additionally, plaintiff's request for a declaration that Article 12, Section 10 of the Louisiana Constitution and La. Rev. Stat. §13:5109(B)(2) are unconstitutional because they violate the Supremacy Clause of the United States Constitution is also DISMISSED WITH PREJUDICE. Finally, this Court concludes the plaintiff is not entitled to nominal damages, nor is he entitled to attorneys' fees pursuant to 42 U.S.C. §1988, and these claims are DISMISSED WITH PREJUDICE.

Finally, this Court understands there is a strong presumption, pursuant to Rule 54(d) of the Federal Rules of Civil Procedure,[31] that costs are to be borne by the non-prevailing party, in this case, the plaintiff. However, considering the unique facts and circumstances of this case -- not the least of which is the fact that the plaintiff has had a judgment against St. Landry Parish for seventeen years and has no way of enforcing it despite being rendered permanently disabled due to the fault of the Parish – this Court, in its discretion, will not impose the costs of this matter on the plaintiff. Rather, it is ORDERED that each party shall bear its own costs.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___19___ day of November 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT COURT

---

[31] Rule 54(d)(1) states:

> Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 1 day's notice. On motion served within the next 5 days, the court may review the clerk's action.

Fed.R.Civ.P. 54(d)(1).

Although a district court has discretion to award costs under Rule 54(d), there is a strong presumption that the prevailing party will be awarded costs. *See Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985), *citing Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352, 101 S.Ct. 1146, 1150, 67 L.Ed.2d 287 (1981). In *Schwarz*, the court held that a defendant was a "prevailing party" where the plaintiff's claims were dismissed with prejudice even though the court did not consider the merits of the plaintiff's claims, stating "[b] a dismissal with prejudice is tantamount to a judgment on the merits, the defendant in this case . . . is clearly the prevailing party and should ordinarily be entitled to costs." 767 F.2d at 130.

Here, this Court concludes the Parish of St. Landry is the prevailing party, as all claims asserted by the plaintiff have been deemed to have no merit and have been dismissed with prejudice.